IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMANTHA TOLENE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14 C 2671 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| T-MOBILE, USA, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Samantha Tolene filed this case against T-Mobile, USA, Inc. (T-Mobile) alleging five counts: termination in violation of the Fair Labor Standards Act of 1983 (FLSA), 29 U.S.C. §§ 207(r), 215(a)(2)–(3); termination in violation of the Illinois Nursing Mothers in the Workplace Act (INMWA), 820 Ill. Comp. Stat. 260; termination in violation of the Illinois common law tort of retaliatory discharge; termination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-2, 2000e-3(a); and termination in violation of the Illinois Human Rights Act (IHRA), 775 Ill. Comp. Stat. 5. (Dkt. 22 (Sec. Amend. Compl.).) T-Mobile has moved for summary judgment on all counts. (Dkt. 38.) For the reasons stated below, T-Mobile's motion for summary judgment (dkt. 38) is granted.[1]

## BACKGROUND[2]

Tolene is a former T-Mobile employee. (Dkt. 40 (Def.'s Local Rule 56.1 Statement of Material Facts (Def.'s LR 56.1)) ¶ 5; Dkt. 48 (Pl. Resp. to Def.'s LR 56.1) ¶ 5.) From August 2010 to May 2011, she worked as a retail sales associate (RSA) at T-Mobile's Orland Park,

---

[1] The court has jurisdiction over the FLSA and Title VII claims under 28 U.S.C. § 1331. The court has supplemental jurisdiction of the INMWA, Illinois common law tort of retaliatory discharge, and IHRA claims under 28 U.S.C. § 1367 because these claims are so related to the federal claims, where they are based on the same facts and incidents, that they form part of the same case or controversy. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.

Illinois store. ( Def.'s LR 56.1 ¶¶ 10–11.) Beginning in July 2012, she became the retail sales manager (RSM) at the T-Mobile store in Chicago's Lakeview neighborhood. (*Id*. ¶ 13.)

In December 2013, while Tolene was on Family Medical Leave Act (FMLA) leave after child birth, she contacted her district manager, Nemanja Bulic, and told him that she wanted to (1) transfer to a store closer to home, (2) work part-time, and (3) take a voluntary demotion to a RSA position. (*Id*. ¶¶ 23–24.) She asked Bulic "to limit [transfer] options to the Orland or Joliet areas based on her child care location." (*Id*. ¶ 25.) Tolene never mentioned her need for a private space to pump breast milk during the transfer discussions. (*Id*. ¶ 27.)

This was the first time Bulic had been presented with such a request while an employee was on maternity leave. (*Id*. ¶ 26.) As such, he thought that T-Mobile would be able to transfer Tolene to the Orland Store while she was still out on leave. (*Id*.) On December 30, 2013, Andrea Williams, Human Resources Business Partner, told Bulic that Tolene's transfer could not be processed until Tolene returned to work because "(1) employees must return to their same or similar position when they are on FMLA leave, and (2) T-Mobile is unable to make changes to employee records in its internal systems when an employee is out on leave." (*Id*. ¶ 28.)

On January 12, 2014, Tolene's FMLA leave ended and she returned to work the following day. (*Id*. ¶ 33.) She worked January 13 and 14 and completed employee reviews for the Lakeview store. (Pl. Resp. to Def.'s LR 56.1 ¶ 86.) On January 16, she met with Kristin Wunderlich, RSM for the Orland store. (Pl. Resp. to Def.'s LR 56.1 ¶ 37; Def.'s LR 56.1 ¶ 37.)

---

[2] Unless otherwise noted, the facts in this section are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to plaintiff. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact, including T-Mobile's motion to strike (see dkt. 71), and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

Wunderlich told Tolene that she would need to work full time at the store until her transfer was processed. (*Id*.) During this meeting, Tolene did not tell Wunderlich that she would need a private place to pump while at work at the Orland store. (*Id*. ¶ 38.) Later that day, Tolene texted Adam Thurston, the district manager for Chicago Metro South, and asked him whether there was anything that could be done about working the full time hours she was told she would have to work for the next two weeks because she did not have someone to watch her baby full time. (*Id*. ¶ 39). Later that evening, Tolene spoke to Williams about the situation but could not recall whether she told Williams that she needed a place to pump at the Orland store or whether she only told Williams that she could not work full time because of the baby.[3] (*Id*. ¶ 41.)

Tolene was scheduled to work at the Orland store on January 17, 2014, at 9:30 a.m. That morning, at 8:17 a.m. she texted Wunderlich and told her that she was not feeling well and that she would let Bulic know about her absence because "technically they hadn't officially sent [her] the offer letter" for the Orland store position. (*Id*. ¶¶ 42–43.) It is implicit, then, that Tolene understood that she was still responsible for reporting to Bulic, her manager. On January 18th, Tolene was scheduled to work at 10:00 a.m. (*Id*. ¶ 45.) When she failed to report to work or call in, Wunderlich texted her at 10:08 a.m. (*Id*.) At 12:23 p.m. Bulic texted her and told her that "they needed to talk about her attendance because he had received a call from Thurston to let him know that Tolene had not worked her scheduled days at the Orland store. (*Id*. ¶ 46.) At 9:19 p.m. that night, Tolene sent Williams an email which stated, among other things, "that (1) she could not 'work an entire shift without feeding the baby or pumping,' (2) there was no place at the Orland Store where she could pump during the day and it was not feasible to go home during her break, and (3) she had not talked to Bulic or Thurston about her need for a place to

---

[3] In fact, in her response to T-Mobile's statement of facts, Tolene admits that on January 18, she told Williams for the first time that she needed a private space to pump. (Pl. Resp. to Def.'s LR 56.1. ¶ 48.)

3

pump." (*Id*. ¶ 48 (quoting dkt. 40-1, Ex. C, Tolene's email).) This was the first time Tolene informed Williams of her need for a private space to pump. (*Id*.)

At 9:22 p.m., Tolene responded to Wunderlich's text from that morning. (*Id*. ¶¶ 45, 49.) Tolene texted Wunderlich and told her (1) that she did not report to work because she was sick, and (2) she could not "work all day without feeding or pumping and there isn't anywhere at work to do that." (*Id*. ¶ 49.) This was the first time Tolene informed Wunderlich that she needed a place to pump. (*Id*.)

The following afternoon, January 19, at 2:19 p.m., despite not typically working on Sundays, Williams responded to Tolene's email and informed Tolene that she was "planning to work with Adam to ensure [Tolene] ha[d] a private and clean space to pump until the transition into [her] new role." (*Id*. ¶ 52.) Immediately after sending this email, Williams emailed Thurston and asked him to call her in the morning to discuss Tolene's transition plan and to ensure she had a clean and private space to pump. (*Id*. ¶ 53.) The following day, January 20, Williams informed Tolene that it was not feasible to construct a space for her to pump at the Orland store. Bulic also called Tolene that day and directed her to report to the Lakeview store because it had two private office spaces where she could pump and because she was still the RSM there. (*Id*. ¶ 56.)[4]

On January 21, 2014, Bulic spoke with Tolene and once again told her to report to the Lakeview store. (*Id*. ¶ 58.) Bulic also directed Tolene to call Bulic back later that evening so that she could confirm that she would be reporting to the Lakeview store. (*Id*.) When she failed to call Bulic by the end of the day on January 21st, Bulic called her at 5:39 p.m. (*Id*. ¶ 61.) On January 22, 2014, after Tolene failed to report to the Lakeview store, Bulic emailed Williams and

---

[4] The parties disagree on whether the offices were "open"/available and whether Tolene was still the RSM at the Lakeview store. These issues are addressed *infra*.

asked her whether he should call Tolene again. (*Id.* ¶ 63.) Williams told Bulic to reach out to Tolene again and that if she did not respond back within twenty-four hours, they would need to discuss what to do next. (*Id.*) On January 23, 2014, once again, Tolene did not report to the Lakeview store or call Bulic. (*Id.* ¶ 67.)

On January 27, 2014, Bulic sent a letter to Tolene citing to T-Mobile's attendance policy and advising her that she had failed to contact her manager and failed to show up to work for three consecutive days in violation of T-Mobile's attendance policy. (*Id.* ¶ 71.) The letter indicated that "[i]f there are circumstances that prevented you from working *or* notifying us of the reasons for your absence, please notify us in writing no later than January 31, 2014." (Dkt. 40-1, Exh. J, Letter to Tolene.) Tolene received the letter on or around January 30 but did not call Bulic or send a written response to advise him that she had not received his calls or to explain why she had not reported to work. (Pl. Resp. to Def.'s LR 56.1 ¶ 72; Def.'s LR 56.1 ¶ 72.) Bulic and Williams waited until February 4, 2014, before processing a job abandonment notice in the internal HR system." (*Id.* ¶ 73.)

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving

party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare*, 629 F.3d at 704.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

**I.     FLSA Breaktime For Nursing Mothers – 29 U.S.C. § 207(r)**

T-Mobile contends that no private right of action exists for a direct violation of § 207(r)[5] of the FLSA. (Dkt. 39 at 3.) Tolene responds that § 216(b) establishes a private enforcement mechanism. (Dkt. 62 at 6 (citing *Lico* v. *TD Bank*, 14-CV 4729 (JFB)(AKT), 2015 WL 3467159, at *3 (E.D.N.Y. June 1, 2015)).) T-Mobile relies on other district court cases holding that there is no private right of action under § 207(r) of the FLSA, (dkt. 69 at 2 (citing *Salz* v. *Casey's Mktg.*, No. 11–CV–3055–DEO, 2012 WL 2952998 (D. Iowa July 19, 2012); *Ball* v.

---

[5] Section 207(r)(1) of the FLSA states,

> An employer shall provide--
>
> (A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and
>
> (B) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 207(r)(1)(A)–(B).

6

*Ohio Ambulance Sols., LLC*, No. 14 CV 355, 2015 WL 5165451 (N.D. Ohio Aug. 28, 2015))), and argues (2), even if there were a private right of action under *Lico*, "its holding does not apply here because Tolene is not seeking unpaid minimum wages or overtime, which is the only private cause of action recognized in *Lico*." (Dkt. 69 at 2–3.)

In *Lico*, the plaintiff alleged that her employer "failed to provide her with adequate space to express milk and did not permit her to take necessary lactation breaks during her work day," in violation of 29 U.S.C. § 207(r). *Lico*, 2015 WL 3467159, at *1. There, the defendant sought to dismiss the plaintiff's § 207(r) claim by arguing that § 207(r) is not privately enforceable. *Id*. at *2 (citing *Salz*, 2012 WL 2952998). The court explained that 207(r) must be read in conjunction with § 216(b)'s penalty provision, *id*., which states, in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected *in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages*. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, *allow a reasonable attorney's fee to be paid by the defendant, and costs of the action*.

29 U.S.C. § 216(b) (emphasis added). Accordingly, the court found that "[t]he entitlement to a private right of action could not be more clearly stated in [§ 216(b)]," and that the penalty provision therefore provided a private right of action for violations of all § 207 violations, including § 207(r). *Lico*, 2015 WL 3267159, at *3. The court clarified, however, that § 216(b) limits the private remedies available for violations of § 207(r) to lost wages and overtime, liquidated damages, attorneys' fees, and costs that result from the employer's failure to provide an adequate space for lactation. *Id*. Thus, the court in *Lico* held that there is a limited private

7

right of action for the enumerated damages in § 216(b) for violations of § 207(r). *Id*. Because the court finds the reasoning in *Lico* persuasive, it concludes that § 216(b) creates a private right of action to enforce violations of § 207(r). Section 216(b), however, does not provide Tolene a remedy because she received all pay that was due.

The court agrees with T-Mobile that Tolene's claim does not fit into the limited private right of action established. The court notes that although Tolene claims she is seeking unpaid wages, she was paid her full-time manager salary in January 2014, even when she failed to report for work. Tolene falsely claims that she was not paid during January 2014 because her "net pay" documents produced by T-Mobile show that it was "$0.00." To the contrary, the documents attached to Lindsay Gunderson's affidavit,[6] demonstrate that Tolene was paid $910.58 on January 24, 2014 and $1,137.76 on February 7, 2014 after deduction for taxes, 401(k) and other health and welfare benefits. (*See* dkt. 40-3, Exhs. 9A and 9B.) As such, T-Mobile is entitled to summary judgment on this claim.

## II. FLSA Retaliation – 29 U.S.C. § 215(a)(3), Title VII, And The IHRA[7]

As an initial matter, the parties dispute whether Tolene is entitled to relief under either Title VII or the IHRA. Title VII prohibits employers from discriminating against employees on the basis of sex, which includes, but is not limited to discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. 2000e-(k). IHRA similarly prohibits discrimination on the basis of "pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth." 775 Ill. Comp. Stat. 5/2-102(I). While the parties disagree

---

[6] Lindsay Gunderson is the Manager, HR Operations, for T-Mobile USA, Inc. She also serves as the Custodian of Records.

[7] In her response, Tolene lumps these three claims together into an overall discussion of unlawful retaliation. Because Tolene's FLSA § 215(a)(3), Title VII, and IHRA claims are all based on retaliation the court deems it appropriate to combine the discussion.

on whether breastfeeding is protected activity under either Title VII or the IHRA, the court need not resolve this dispute because T-Mobile is entitled to summary judgment on the Title VII and IHRA claims regardless of whether breastfeeding is protected activity.[8]

To establish a retaliation claim under 29 U.S.C. § 215(a)(3), Title VII, and the IHRA, Tolene has the burden of establishing that T-Mobile engaged in retaliatory conduct, either through the direct or indirect method of proof. *See Bagwe* v. *Sedwick Claims Management Services, Inc.*, --- F.3d ---, 2016 WL 304043, at *6 (7th Cir. Jan. 13, 2016) (regarding Title VII and the IHRA); *Chichon* v. *Exelon Generations Co., LLC*, 401 F.3d 803, 810 (7th Cir. 2005) (regarding 29 U.S.C. § 215(a)(13)). Tolene does not attempt to establish retaliation under the indirect method in her brief, and relies solely on the direct method. Accordingly, this court need not discuss the indirect method. *See Nichols* v. *Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014) (explaining that a "non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment"); *Johnson* v. *City of Chicago Bd. of Educ.*, No. 13 C 5631, 2015 WL 6701767, at *5 (N.D. Ill. Nov. 2, 2015) (finding that because the plaintiff had only responded with arguments under the direct method and did not advance any argument under the indirect method, the plaintiff had waived those arguments and thus the court did not need to address the indirect method).

Under the direct method, Tolene must establish that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *Scott* v. *Sunrise Healthcare Corp*., 195

---

[8] The Seventh Circuit has not addressed the issue of whether "breast-feeding" is a protected activity under Title VII or IHRA, while other courts have taken a position. For example, the Fifth Circuit found that discrimination against a woman who is breast-feeding may be actionable sex discrimination. *See EEOC* v. *Houston Funding II, Ltd*., 717 F.3d 425, 430 (5th Cir. 2013). In contrast, the district court in Colorado found that the plaintiff's desire to "continue to breastfeed her infant daughter," is not actionable under Title VII. *See Falk* v. *City of Glendale*, No. 12–cv–00925-JLK, 2012 WL 2390556, at *3 (D. Colo. June 25, 2012).

F.3d 938, 940 (7th Cir. 1999).  Tolene has the burden of proving causation through direct or circumstantial evidence.  *Treadwell* v. *Office of Ill. Sec'y of State*, 455 F.3d 778, 782 (7th Cir. 2006).  Circumstantial evidence, which allows for a jury to infer retaliation, includes suspicious timing, ambiguous statements or behaviors or pretextual reasons for the employment action. *Kasten* v. *St.-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972–73 (7th Cir. 2012).

The parties do not dispute the first element.  Indeed, T-Mobile contends that Tolene cannot show the second and third elements: "(1) that the directive to report back to the Lakeview store was an adverse action, or (2) cite to any material facts to prove a link exists between her termination and her request to pump." (Dkt. 39 at 8–9.)  Because the court finds the resolution of the third element is dispositive, the court assumes for the purposes of discussing the causal link that there were two adverse employment actions:  (1) having her part-time offer for the Orland store rescinded and requiring her to report to the Lakeview store, and (2) being terminated.[9]

### A. Causal Link Between Requesting A Private Space To Pump And Rescinding The Part-Time Job Offer And Requiring Her To Report To The Lakeview Store

Tolene claims that circumstantial evidence, such as suspicious timing of T-Mobile's decision to rescind the part-time job offer to work at the Orland store, and the pretextual reason—that the Orland store would have to be retrofitted to provide Tolene with a private space to pump—for the employment action, establishes causation.  Her claims, however, are not supported by the record.

Tolene's reliance on the length of time between her request to pump and the alleged decision to rescind her part-time job offer alone is not sufficient to survive summary judgment.

---

[9] To be clear, the court does not in any way resolve the dispute between the parties as to whether there was a rescission of an offer in the first place, and/or if there was a rescission of an offer, whether the rescission alone constitutes an adverse employment action.

*See Harper* v. *C.R. England, Inc.*, 687 F.3d 297, 309 ("Because evidence regarding suspicious timing, without more, is generally insufficient to support a reasonable inference of retaliation, we conclude that Mr. Harper has failed to establish a prima facie case of retaliation under the direct method of proof.") Here, the undisputed facts show that T-Mobile did not rescind her offer to work part-time and direct her to report to the Lakeview store because she requested a private space to pump: in December 2013, before returning from FMLA leave, Tolene contacted her district manager and requested a transfer to a store closer to her home, to work part-time, and take voluntary demotion to RSA (Def.'s LR 56.1 ¶¶ 23–24); she asked Bulic "to limit [transfer] options to the Orland or Joliet areas based on her child care location" (*id.* ¶ 25); she was informed that the transfer could not be processed until she returned to work because "(1) employees must return to their same or similar position when they are on FMLA leave, and (2) T-Mobile is unable to make changes to employee records in its internal systems when an employee is out on leave" (*id.* ¶ 28); on January 16, 2014, she met with the RSM at the Orland store and she was told that she would need to work full-time hours at the store until her transfer was processed (*id.* ¶ 37); after failing to report to the Orland store for two consecutive days, Tolene sent Williams an email on January 18, 2014, at 9:19 p.m., which stated, among other things, "that (1) she could not 'work an entire shift without feeding the baby or pumping,' (2) there was no place at the Orland Store where she could pump during the day and it was not feasible to go home during her break, and (3) she had not talked to Bulic or Thurston about her need for a place to pump" (*id.* ¶ 48 (quoting dkt. 40-1, Exh. C, Tolene's email)); the email on January 18th was the first time Tolene informed Williams's of her need for a private space to pump (*id.*); on January 19, 2014, Williams emailed Tolene and informed her that she was planning on working with Thurston to ensure that Tolene had a private and clean space to pump

until the transition into her new part-time position (*id*. ¶ 52); immediately thereafter, Williams reached out to Thurston to discuss Tolene's transition plan and her need for a private space to pump (*id*. ¶ 53); after talking to Thurston, Williams informed Tolene that it was not feasible to construct a space for her to pump at the Orland store (*id*. ¶ 55); and as such, was directed to report to the Lakeview store, where there were two private office spaces where she could pump (*id*. ¶ 56). The undisputed facts thus show that T-Mobile responded to Tolene's request to transfer to a part-time position closer to home and was accommodating her needs by letting her work at the Orland store while her transfer request was being processed. Unfortunately, because Tolene did not inform T-Mobile that she needed a private space to pump while at work, T-Mobile did not take this need into consideration when deciding whether a transfer to the Orland store was feasible. Upon learning about Tolene's need for a private space to pump, T-Mobile began the search for reasonable accommodations. To Tolene's misfortune, T-Mobile determined that it was not feasible to construct a private and clean place for Tolene to pump at the Orland store. As such, Tolene was instructed to report back to the Lakeview store in the meantime, since the Lakeview store had two private offices where Tolene could pump.

Tolene now claims that T-Mobile's reason for her not being able to work at the Orland store—because it could not be retrofitted—was pretextual. Tolene argues that the Orland store could accommodate for her need to pump because all that was required was a partition/nursing cover on the left side room or cleaning of the right side room. This argument is contrary to her email to Williams that first notified T-Mobile of Tolene's need for a private space to pump, in which she stated that there was no place at the Orland store where she could pump during the day. Now, in her response, long after she was informed that T-Mobile could not provide accommodations at the Orland store, Tolene claims the opposite. Regardless of this

12

inconsistency, Tolene fails to show that the reason was pretextual.  There is no evidence that when she was informed that the Orland store could not be retrofitted to accommodate her need to pump, she made any attempt to negotiate a more appropriate or comfortable solution to her needs.  Rather she simply failed to report back to the Lakeview store when directed to do so, and now argues after-the-fact that the Orland store could have made certain changes to accommodate her request.  Accordingly, the court finds that Tolene has not shown that T-Mobile's reason for requiring her to report back to the Lakeview store was pretextual.  *Cf. Lara-Woodcock* v. *United Air Lines, Inc.*, 999 F. Supp. 2d 1027, 1045 (N.D. Ill. Nov. 20, 2013) (finding no Title VII violation where defendant had provided plaintiff with a place to express milk and plaintiff, only after-the-fact, argued that the accommodation was insufficient).

Because there was no suspicious timing and no pretextual reason for rescinding the part-time job offer and directing her to report to the Lakeview store, Tolene has not adequately shown a causal link between the adverse employment action and the protected activity.

### B. Causal Link Between Requesting A Private Space To Pump And Job Termination

Tolene also claims that the circumstantial evidence, such as the suspicious timing of T-Mobile's decision to terminate her only six days after she requested a private space to pump, and the pretextual reasons—(1) T-Mobile's attendance policy violations, and (2) lack of communication—for her termination, establishes causation.  Again, her claims are not supported by the record evidence.  Although the court agrees that the timing of her termination is cause for concern, timing alone is generally not enough to survive summary judgment on a retaliation claim.  *See Harper*, 687 F.3d at 309.  The court thus examines whether Tolene has sufficiently established that the stated reasons for termination were pretextual.

T-Mobile argues that it terminated Tolene because she failed to comply with its attendance policy. Tolene argues that this reason is pretextual because the policy says "Employees are responsible for arriving at work every day that they are scheduled at the scheduled time and ready to work." (Dkt. 62.) Tolene argues that because she was not scheduled at the Lakeview store she did not fail to go to work as scheduled. First, the court notes that although Tolene was not on the Lakeview schedule, she was directed to report to the Lakeview store and failed to do so. Next, Tolene's argument is weakened by the fact that she reported to the Lakeview store and worked at the Lakeview store on at least one day in mid-January, even though she admits she was not on the schedule there. (Pl. Resp. to Def.'s LR 56.1 ¶ 34.) Thus, even if she was not written into the schedule at the Lakeview store, she knew she was directed to report to the Lakeview store and chose not to do so.

She further contends that the store was fully "covered," that they did not need her, and that the instructions to report to the Lakeview store were unreasonable. (Dkt. 62 at 12.) The Seventh Circuit, however, has "repeatedly stated that it is not a super-personnel department that second-guesses employer policies that are facially legitimate." *Cf. Widmar* v. *Sun Chemical*, 772 F.3d 457, 464 (7th Cir. 2014). The court explained that "[a] court cannot interfere because an employer's decision is unwise or unfair," and that as long as the defendant was not using its decision for "a discriminatory purpose, we must respect that decision." *Id*. Accordingly, the court will not speculate as to whether it was reasonable or wise to ask Tolene to report to the Lakeview store, especially where the record indicates that this decision was not for discriminatory purposes, but rather was to accommodate Tolene's request for a private space to pump during work. As indicated above, it is undisputed that Tolene requested a transfer to a location closer to her home but did not inform T-Mobile that she needed a place to pump until

14

her transfer to the Orland store had been pre-approved. It is also undisputed that after she made this request, and T-Mobile determined that it could not provide her with a private place to pump at the Orland store, she was directed to report back to the Lakeview store. It is further undisputed (1) that, even though she was directed to report to the Lakeview store, she failed to do so on January 22 and 23 (Pl. Resp. to Def.'s LR 56.1 ¶¶ 63–64); (2) that Bulic called Tolene on January 21and 23 (*id*. ¶¶ 61, 65); (3) that, on January 27, 2014, Bulic sent a letter to Tolene citing to T-Mobile's attendance policy and advising her that she had failed to contact her manager and failed to show up to work for three consecutive days, (Def.'s LR 56.1 ¶ 71); (4) the letter directed her to notify T-Mobile "in writing no later than January 31, 2014," if there were circumstances that prevented her from working, (dkt. 40-1, Exh. J, Letter to Tolene); (5) Tolene received the letter on or around January 30 but did not call Bulic or send a written response to advise him that she had not received his calls or to explain why she had not reported to work (Pl. Resp. to Def.'s LR 56.1 ¶ 72); and (6) "Bulic and Williams waited until February 4, 2014 before processing a job abandonment notice in the internal HR system" (Def.'s LR 56.1 ¶ 73).

Tolene also tries to establish pretext by identifying an alleged comparator, Alan Vega. The burden is on plaintiff to show someone is "similarly situated" to the plaintiff in all material aspects. *Taylor-Novotny* v. *Health Alliance Medical Plans, Inc.*, 772 F.3d 478, 492 (7th Cir. 2014). Tolene offers nothing more than her bald assertions to show that Vega was similarly situated in all material aspects. *Drake* v. *Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of truth of the matter asserted."). Moreover, the little information that Tolene does provide about Vega shows he is not similarly situated because, unlike Tolene, Vega

"communicated with Williams about his absences." (*See* dkt. 48 at ¶ 76.) Although Tolene may have communicated with Williams about her absences on January 17th and 18th, she did not communicate with Williams, or anyone else at T-Mobile, after January 21st to explain why she had failed to report to the Lakeview store from January 22nd through January 27th, when T-Mobil sent Tolene the letter seeking an explanation for her absences. Accordingly, Tolene has not carried her burden to show that Vega is similarly situated in all material aspects, or that some other individual "similarly situated" to her in all material aspects was treated more favorably.

Because suspicious timing alone is rarely sufficient, and Tolene has not established that T-Mobile's reason for termination was pretextual, the court finds that Tolene has not adequately shown a causal link between the adverse employment action (her termination) and the protected activity (her request for a private space to pump).

Accordingly, T-Mobile is entitled to summary judgment on the following retaliation claims: LSA § 215(a)(3), Title VII, and IHRA.

## IV.   INMWA

Tolene also alleges a violation of the INMWA. Under the INMWA, an employer must "make reasonable efforts to provide a room or other location, in close proximity to the work area, other than a toilet stall, where an employee . . . can express her milk in privacy." 820 Ill. Comp. Stat. 260/15.[10] The plain language of the statute is the best indicator of legislative intent. *Allstate Ins. Co.* v. *Menards, Inc.*, 782 N.E.2d 258, 261, 202 Ill. 2d 586, 270 N.E.2d 258 (2002). Where the statutory language is clear, it should be given effect "without resort to other aids of statutory construction." *Id.* (citing *Petersen* v. *Wallach*, 764 N.E.2d 19, 23, 198 Ill. 2d 439, 261 Ill. Dec. 728 (2002)).

---

[10] The parties disagree as to whether there is a private right of action under INMWA. Because the disposition of this claim can be resolved without determining whether there is a private right of action, the court need not resolve this dispute.

In terms of what type of space the employer is required to make available, the statutory language is clear: a room or other location other than a toilet stall. Here, after requesting a private space to pump, Tolene was informed that the Lakeview store—where she was still assigned to work since her transfer had not been completed—had two private office spaces where she could pump. The two private office spaces comply with the plain language of the statute.

The next question is whether T-Mobile made "reasonable efforts" to provide Tolene with a private space to pump. Unfortunately, the INMWA does not define reasonable efforts, and there is currently little guidance as to what constitutes a "reasonable effort." That said, there is one case from this district that deals with facts sufficiently similar to the facts in the present case. As such, the court finds that case instructive in determining what constitutes a "reasonable effort." *See Lara-Woodcock*, 999 F. Supp. 2d at 1046.

In *Lara-Woodcock*, the court found that defendant had not violated the INMWA because the record showed that defendant made reasonable efforts to accommodate plaintiff's need to use a breast pump at work. *Id*. There, the employer made a bathroom/locker room available to plaintiff. *Id*. at 1045. The bathroom/locker room had benches and the defendant stated it would provide a locking refrigerator. Because there was nothing in the record to suggest (1) that the defendant would not fulfill its promise to provide this space, (2) that the proposed accommodation would not have been sufficient to allow the plaintiff to continue to express milk, or (3) that the plaintiff raised her concerns regarding the adequacy of the space and attempted to find a more satisfactory accommodation through further discussions, the court found that defendant had not violated the INMWA. *Id*. 1045–46. Similarly here, the record shows that T-Mobile made reasonable efforts to accommodate Tolene's need to use a breast pump at work.

Upon receiving this request, Williams informed Tolene that she planned to work with Thurston to ensure she had a private place to pump until she transitioned into her new role. As soon as Williams learned it would not be feasible to construct a space for Tolene to pump at the Orland store, Williams informed Tolene and directed her to report to the Lakeview store where two private spaces would be made available for her to pump. Nothing in the record indicates that Tolene raised any objection to the adequacy of the space when she was directed to return to the Lakeview store. Moreover, nothing in the record suggests that the proposed accommodations would not have been sufficient to allow Tolene to express milk for her child. While Tolene argues that she would not have access to these rooms, nothing in the record supports Tolene's contention that she would not have access to those rooms; there is no evidence in the record to suggest that any person using the offices would have refused a request by Tolene to use the space to pump. During her deposition, Tolene testified that she did not think the offices were "open," but there is no evidence that she raised those issues to T-Mobile or attempted to find a more satisfactory accommodation for her need to pump. *Id.* at 1045 ("There is no evidence that she made any attempt to negotiate a more appropriate or comfortable solution to her needs. Rather, she simply failed to report to work when ordered to do so, then argued after-the-fact that she had not been appropriately accommodated.").

Accordingly, T-Mobile is entitled to summary judgment on the INMWA claim. *See id.* at 1046.

## IV. Illinois Common Law Retaliatory Tort

The tort of retaliatory discharge "is an exception to the general rule that an 'at-will' employment is terminable at any time for any or no cause." *Blount* v. *Stroud*, 904 N.E. 2d 1, 9, 232 Ill. 2d 302, 328 Ill. Dec. 239, (Ill. 2009). To prevail on a retaliatory discharge claim, a

plaintiff must establish that she was discharged "in retaliation for her activities," and "that the discharge violates a clear mandate of public policy." *Id*.

Tolene argues that she was discharged because she requested a space to pump during work. As discussed under the FLSA, IHRA, and Title VII retaliation claims above, the record in this case shows that T-Mobile did not discharged Tolene in retaliation for her request for a space to pump, but rather for her unexcused absences from work. Because Tolene has failed to establish that she was discharged "in retaliation for her activities," T-Mobile is entitled to summary judgment on the common law retaliatory tort claim.

## CONCLUSION

For the foregoing reasons, T-Mobile's motion for summary judgment (dkt. 39) is granted. The Clerk is directed to enter judgment in favor of the defendants. Plaintiff shall take nothing on her claim. Costs are allowed to defendant.

Date: March 31, 2016

_Joan N. Lefkow_
U.S. District Judge Joan H. Lefkow